1

2

3

4

5

6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

8   BETTY JEAN DUKES,

                    Plaintiff,                     Case No. C10-1812-RAJ-BAT

9
           v.                                      **REPORT AND
10                                                 RECOMMENDATION**

    MICHAEL J. ASTRUE, Commissioner of the
11  Social Security Administration,

12                  Defendant.

13         Betty Jean Dukes seeks review of the denial of her Supplemental Security Income and

14  Disability Insurance Benefits applications.  She contends the ALJ improperly evaluated the

15  opinions of her treating and examining physicians, and the medical evidence regarding facet

16  arthropathy.  As discussed below, the Court recommends the case be **REVERSED** and

17  **REMANDED** for further administrative proceedings.

18                          **FACTUAL AND PROCEDURAL HISTORY**

19         Ms. Dukes is currently 54 years old, has a GED and two semesters of community college

20  education, and has worked as a salesclerk and medical records clerk.[1]  On September 17, 2007,

21  she applied for benefits, alleging disability as of July 7, 2007.  Tr. 119.  Her application was

22  denied initially and on reconsideration.  Tr. 66, 70.  After conducting a hearing on February 8,

23

---

[1] Tr. 24, 27, 119, 188.

REPORT AND RECOMMENDATION - 1

2010, the ALJ found Ms. Dukes not disabled.  Tr. 4.  As the Appeals Council denied Ms. Dukes'

request for review, the ALJ's decision is the Commissioner's final decision.  Tr. 1.

**THE ALJ'S DECISION**

Utilizing the five-step disability evaluation process,[2] the ALJ made the following

findings:

**Step one:**  Ms. Duke had not worked since July 7, 2007.

**Step two:**  Ms. Duke had the following severe impairments: status post lumbar strain superimposed upon mild degenerative disc disease, and left wrist (non-dominant hand) tendonitis.

**Step three:**  These impairments did not meet or equal the requirements of a listed impairment.[3]

**Residual Functional Capacity:**  Ms. Dukes had the RFC to lift 20 pounds occasionally and 10 pounds frequently.  She can stand or walk for 6 hours in an 8 hour workday, and can sit for 6 hours in an 8 hour workday.  She cannot climb ladders, ropes, or scaffolds but can occasionally perform all other postural limitations.  She can frequently perform handling and fingering. She must avoid exposure to vibration.

**Step four:**  Ms. Dukes could perform her past relevant work as a general merchandise sales person and as a medical records clerk and is not disabled.

Tr. 9-13.

**DISCUSSION**

**A.     The ALJ's evaluation of the medical source evidence**

Ms. Dukes argues the ALJ erred in evaluating the opinions of her treating and examining

physicians.  Dkt. 17.  In general, more weight should be given to the opinion of a treating

physician than to a non-treating physician, and more weight to the opinion of an examining

physician than to a non-examining physician.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).

Where not contradicted by another physician, a treating or examining physician's opinion may

---

[2] 20 C.F.R. §§ 404.1520, 416.920.
[3] 20 C.F.R. Part 404, Subpart P. Appendix 1.

REPORT AND RECOMMENDATION - 2

be rejected only for "clear and convincing reasons." *Id.* at 830-31.  Where contradicted, a treating or examining physician's opinion may not be rejected without "specific and legitimate reasons" that are supported by substantial evidence in the record. *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).  An ALJ does this by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation of the facts and evidence, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  The ALJ must do more than offer his conclusions; he must also explain why his interpretation, rather than the treating doctor's interpretation, is correct. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

### 1.  Mitchel D. Storey, D.O.

Dr. Storey began treating Ms. Dukes in November 2007, after she hurt her back lifting clothes while working at Macy's department store.  Tr. 487.  The doctor found Ms. Dukes had chronic back pain that was "both discogenic and facetogenic in nature."  Tr. 473.  Ms. Dukes argues the ALJ erred in rejecting Dr. Storey's opinions that she needed to sit as necessary to work as a cashier; that she could not work as of April 2008; that she was "destined to failure" if she was made to work because "her pain has now consumed her;" and that her sitting, standing, walking limitations and pain are "not conducive to employment."[4]

The ALJ rejected these opinions finding "[a]lthough Dr. Storey opined the claimant would need to be able to sit as needed, given the claimant's outlandish pain behavior that has been noted by several doctors, there is no medical evidence to support this limitation."  Tr. 12.  This is not a specific and legitimate reason, supported by substantial evidence in the record, to reject the Dr. Storey's opinion.  First, there is no dispute Ms. Dukes suffers from back problems

---

[4] *See* Tr. 474, 476, 472, 626.

1   that are disc and facet related and which could impair her ability to stand.  The ALJ found as

2   much at step two and in stating that Ms. Dukes' impairments could reasonably be expected to

3   cause her alleged symptoms.  Tr. 11.

4   　　　　Second, the ALJ relied on the opinions of Dr. Paul Reis, M.D. and Dr. William Thieme,

5   M.D.[5] in finding Ms. Dukes exhibited outlandish pain behavior and that there was no evidence to

6   support a standing limitation.  This reliance was misplaced.  Both doctors rendered opinions

7   limited to whether Ms. Dukes' work-related injury (lumbar strain or sprain) rendered her

8   disabled.  *See* Tr. 530, 536.  Both doctors opined Ms. Dukes exhibited excessive pain behavior

9   for lumbar strain.  *Id*.  But, although both doctors noted Ms. Dukes also suffered from

10  degenerative or arthritic facet disease, neither gave opinions about the effects of this impairment

11  on her ability to work, or whether Ms. Dukes' pain behavior was excessive given this

12  impairment.  Thus, the opinions of Dr. Reis and Dr. Thieme are not grounds to rebut Dr. Storey's

13  opinions which encompassed both of Ms. Dukes' back impairments—degenerative or arthritic

14  facet disease and lumbar sprain or strain—and their limiting effects on her ability to stand.

15  　　　　Although the ALJ erred in rejecting Dr. Storey's opinions, the Court declines Ms. Dukes'

16  request to credit as true the doctor's opinions and to direct an award of benefits.  The Court does

17  so because while Dr. Storey opined Ms. Dukes has work limitations, he also found she has

18  increasing "nonphysiologic findings of her back," that "she is qualified for a couple of jobs" and

19  that she was working as a "certified risk management specialist" when he examined her on

20  September 15, 2008.  Tr. 472, 625.  Based on this record, it is not clear the ALJ would be

21  required to award benefits if the evidence accepted was credited.  Under these circumstances it is

22  appropriate to remand the matter for further determinations.  *See Connett v. Barnhart*, 340 F.3d

23

---

[5]  Referred to by the ALJ as Dr. Thiene.  Tr. 12.

REPORT AND RECOMMENDATION - 4

1   871, 876 (9th Cir. 2003).

2        **2. Jeffrey Fitzhum, M.D.**

3        Dr. Fitzhum opined Ms. Dukes was not able to return to work as of March 8, 2008.  Tr.

4   419.  The ALJ rejected this opinion finding the doctor relied "entirely on the claimant's

5   subjective complaints of pain" and because "the claimant has exaggerated her pain symptoms."

6   Tr. 12.  The record does not support this finding.  Dr. Fitzhum opined that "the location of the

7   pain and the findings of the lumbar CT, MRI, and SPECT indicate that back pain is

8   predominantly facetogenic."  Tr. 419.  This evidences the doctor considered objective medical

9   evidence in rendering his opinions and did not rely entirely on Ms. Dukes' subjective complaints.

10        An ALJ, of course, may give less weight to a medical opinion that is based to a large

11   extent on a claimant's self-reports that have been properly discounted as incredible.  *Tommasetti*

12   *v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).  Here, however, the ALJ discounted Ms. Dukes'

13   pain complaints based on the opinions of Dr. Paul Reis, M.D. and Dr. William Thieme M.D.  As

14   discussed above, these two doctors opined Ms. Dukes' complaints of pain was excessive for

15   lumbar strain.  But neither opined Ms. Dukes' pain behavior was excessive for degenerative or

16   arthritic facet disease, a condition that both noted Ms. Dukes had, and which Dr. Fitzhum opined

17   was the primary source of Ms. Dukes' pain.  Hence, the ALJ erred in finding Ms. Dukes'

18   excessive pain complaints were proper grounds to reject Dr. Fitzhum's opinions.

19        **3. William Korbonits, M.D.**

20        Dr. Korbonits opined in a DSHS evaluation that Ms. Dukes was limited to sedentary

21   work.  Tr. 543.  The ALJ rejected this opinion finding the doctor did not explain his opinion,

22   failed to explain the bone scan results mentioned in evaluation, and relied on Ms. Dukes'

23   subjective complaints of pain in reaching his conclusions.  Tr. 12-13.  Ms. Dukes correctly

REPORT AND RECOMMENDATION - 5

argues the ALJ erred.  Dr. Korbonits examined Ms. Dukes and made clinical findings that included tender lumbar muscles, and slow gait due to pain; the doctor further found she had sciatica that caused moderate limits to walking, standing and sitting.  Dkt. 19 at 13.  There is thus, evidence indicating the doctor rendered his opinions based on his clinical examination of Ms. Dukes, rather than relying entirely on Ms. Dukes' subjective complaints.  While the doctor's explanation of his opinion is skimpy, as is typical of virtually all evaluations using the DSHS form, this is not a situation in which the doctor rendered a conclusory opinion, and nothing more.

The ALJ also indicated the doctor found Ms. Dukes had a bone scan showing facet degeneration but failed to attach or explain the bone scan results.  These failures might be grounds to reject the doctor's opinions if the scan results were not part of the medical record, or if the results contradicted the doctor's opinions.  However, the scan results are part of the medical record.  In fact, Dr. Reiss, one of the doctors whom the ALJ accorded great weight, noted Ms. Dukes had a "bone single photon emission computer tomography" scan that revealed she suffers from multi-level facet arthropathy—arthritic facet disease.  Tr. 530.  Hence, as the record tells us what the scan showed, the fact Dr. Korbonits did not attach the results is not a specific and legitimate reason to reject Dr. Korbonits' opinion.

Additionally, the bone scan results do not contradict Dr. Korbonits' opinions.  Rather, Dr. Fitzhum and Dr. Storey both opined that Ms. Dukes suffered significant pain and limitations from her back problems that included arthritic facet disease.  Dr. Fitzhum specifically opined Ms. Dukes' pain was caused by her facet disease.  Had the scan showed no disease process, the ALJ would be on firm grounds to discount Dr. Korbonits' opinion for failure to discuss the scan results.  But here, Dr. Korbonits' failure to expound on the results of the bone scan do not undermine his opinions as there is medical evidence that the bone scan showed facet

1  degeneration, which several treating doctors opined is a source of Ms. Dukes' pain and

2  limitations.

3         Although the ALJ erred, the Court cannot say it is clear the ALJ would be required to

4  award benefits if the evidence, if accepted, were credited.  Dr. Korbonits indicated he believed

5  the limitations he found would last about 6 months and that she was able to participate in pre-

6  employment activities such as a job search.  Under these circumstances it is appropriate to

7  remand the matter for further determinations.

8         **4.  Steven Dresang, M.D.**

9         In a DSHS evaluation, treating physician Steven Dresang, M.D. opined Ms. Dukes could

10  perform only sedentary work with the following limitations:  no lifting over ten pounds, no

11  pushing over 25 pounds, no bending or stooping, and position changes "ad lib."  Tr. 636.  The

12  ALJ rejected Dr. Dresang's opinions on the grounds there was no narrative statement contained

13  in the DSHS evaluation form and as inconsistent with the doctor's separate treatment notes.  Tr.

14  13.

15         As to the lack of a narrative statement, the record does not support this argument.  The

16  DSHS evaluation contains the doctor's notes showing he performed a clinical examination and

17  that based on that examination reached the opinion Ms. Dukes was limited to sedentary work.

18  *See* Tr. 636-37.  Moreover, Dr. Dresang's separate treatment notes contain additional

19  information which flesh-out his opinion about Ms. Dukes' impairments, at least as to her ability

20  to stand, walk, and sit.  *See* Tr. 590-602.

21         The ALJ is correct there is an inconsistency between the doctor's DSHS opinion and his

22  treatment record notes regarding Ms. Dukes' lifting and pushing ability.  The treatment records

23  do not indicate Ms. Dukes is limited to lifting less than ten pounds and pushing less than 25

pounds as noted in the DSHS opinion.  Rather the doctor indicated in one examination Ms.

Dukes had no motor weakness and in another examination that her motor strength was 5/5.  Tr.

590, 601.  Hence it was correct for the ALJ to reject the portion of the doctor's opinion regarding

lifting and pushing limitations.

The ALJ, however, incorrectly found that there was an inconsistency between Dr.

Dresang's DSHS opinion and his treatment records regarding Ms. Dukes' standing and sitting

ability and need to change positions as needed.  The ALJ found there was an inconsistency

because Dr. Dresang's treatment records indicated Ms. Dukes had intact balance, gait, and

coordination.  Tr. 13.  But these records do not go to Ms. Dukes' ability to stand, walk, and sit.

For instance, the fact Ms. Dukes has intact balance, indicates she can stand with balance; but it

does not establish how long she can stand, or whether she needs to sit as needed.  Hence, the

doctor's findings regarding balance, gait, and coordination are not a basis to discount Dr.

Dresang's DSHS evaluation opinions regarding limits to sitting, standing, and walking.

Moreover, the doctor's treatment records noted Ms. Dukes had back problems affecting her

ability to stand, walk, and sit—notes that are consistent with the DSHS opinion.  *See* Tr. 592,

594.

Although the ALJ erred, as discussed, above, the Court cannot say it is clear the ALJ

would be required to award benefits if the evidence accepted was credited.  As such, it is

appropriate to remand the matter for further determinations.

**CONCLUSION**

For the foregoing reasons, the Court recommends that the Commissioner's decision be

**REVERSED** and the case be **REMANDED** for further administrative proceedings.  On remand,

the ALJ should reassess the medical source opinions, especially as to the effects of Ms. Dukes'

facet arthropathy on her ability to work, and expand the medical record as deemed appropriate. The ALJ should reevaluate, as necessary, Ms. Dukes' residual functional capacity at steps four and five and with the assistance of a vocational expert if deemed appropriate.  A proposed order accompanies this Report and Recommendation.

Objections, if any, to this Report and Recommendation must be filed and served no later than **June 6, 2011**.  If no objections are filed, the matter will be ready for the Court's consideration on that date.  If objections are filed, any response is due within 14 days after being served with the objections.  A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served.  Responses to objections must be filed no later than 14 days after being served with objections.  Objections and responses shall not exceed twelve pages.  The failure to timely object may affect your right to appeal.

DATED this 23rd day of May, 2011.

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 9